**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ANNA HURWITZ, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| GEORGIA UNITED CREDIT UNION, | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Anna Hurwitz (hereinafter "Ms. Hurwitz" or "Plaintiff"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117, and 29 U.S.C. § 261(b).

3.

Defendant Georgia United Credit Union (hereinafter "Defendant" or "GUCU"), does business in this judicial district.  Additionally, the unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.  Plaintiff is subject to the jurisdiction of this Court.

5.

During the relevant time period, August 5, 2019, through February 5, 2021, Plaintiff was employed by Defendant.

6.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

7.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, C T Corporation System, 289 S. Culver St., Lawrenceville, GA 300046-4805.

8.

Plaintiff is considered an "eligible employee" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq.*

9.

Defendant is an "employer" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq*, which includes a "successor in interest."

10.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

11.

Plaintiff was employed by Defendant for more than twelve (12) months.

12.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

13.

At all such times, Plaintiff was also an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

14.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

**ADMINISTRATIVE PROCEDURES**

15.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on April 17, 2021.

16.

The EEOC issued a "Notice of Right to Sue" on August 17, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

17.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## **FACTUAL ALLEGATIONS**

18.

Ms. Hurwitz began her employment with Georgia United Credit Union on August 5, 2019, as a People & Services Specialist.

19.

Ms. Hurwitz suffers from disabilities, of which GUCU had knowledge at all times relevant.

20.

At the time of her hiring, Ms. Hurwitz suffered from chronic back pain resulting from residual scar tissue and nerve damage, caused by five prior back surgeries. She was later diagnosed with her second disability, sleep apnea.

21.

Ms. Hurwitz informed her manager, Mindi Greenland ("Ms. Greenland") of her disability when she was first hired as a contractor.

22.

Ms. Hurwitz had regular doctors' appointments throughout her first three months of employment. She was told to email requests to Ms. Greenland to request the time off for her appointments.

23.

Ms. Hurwitz informed Ms. Greenland that the doctors' appointments were for pain medication, and that she had to go into the office to get the prescription.

24.

Upon Ms. Greenland's request, Ms. Hurwitz shared her private calendar of medical appointments with Ms. Greenland.

25.

Ms. Hurwitz also shared with Ms. Greenland the results of her recent sleep study, the diagnosis of sleep apnea.

26.

When sleep apnea caused Ms. Hurwitz extreme fatigue, she struggled to stay awake during the day. She had to take a couple days off from work due to the fatigue, which Ms. Greenland allowed.

27.

Employees were sent home to work remotely in mid-March 2020. They returned around the end of May 2020, with a hybrid schedule. Generally, they would work 1-2 days per week in office and at home the rest of the time. This continued until Ms. Hurwitz's termination.

28.

During the summer of 2020, Ms. Hurwitz told Ms. Greenland that she was receiving work phone calls and texts messages on her cell phone over weekends and late at night because she did not have a work phone at home. She also told Ms. Greenland that the after-hours phone calls were interfering with her ability to sleep. Nothing was done, and Ms. Hurwitz continued to receive the calls.

29.

On or about July 24, 2020, Ms. Hurwitz told Ms. Greenland that she had had five prior back surgeries and was currently experiencing an unusual amount of pain. Ms. Hurwitz needed to go to the doctor to receive injections in her back.

30.

In October 2020, Ms. Greenland shared her plan to promote Ms. Hurwitz with her. Ms. Greenland stated she was just waiting for Ms. Anna Faryna ("Ms. Faryna") to return from Maternity Leave, which she did November 2020.

31.

In November 2020, Ms. Greenland told Ms. Hurwitz that she would be changing some of her responsibilities. She mentioned a new Human Resources position, HR Manager, but told Ms. Hurwitz that she was not "seasoned enough" for the role.

32.

The new position would have been a promotion and increase in salary for Ms. Hurwitz.

33.

On November 30, 2020, GUCU posted the job externally.

34.

The job posting stated that the position required 5 years of human resources experience and 2 years of managerial experience. At that time Ms. Hurwitz had the required years of managerial experience, as well as 15 years of human resources experience.

35.

On or around December 17, 2020, Ms. Hurwitz informed Ms. Greenland that her doctor instructed her to go to physical therapy a few days a week. However, Ms. Hurwitz did not proceed with scheduling her physical therapy sessions at that time,

because upon hearing of her scheduling needs, Ms. Greenland's attitude towards her changed.

36.

Ms. Greenland became evasive when Ms. Hurwitz tried to discuss FMLA with her in early December. She ignored several emails where Ms. Hurwitz communicated potential discrimination issues other employees were experiencing. She also began expressing that she did not believe Ms. Hurwitz when she explained that she was in pain. And though she had listened to Ms. Hurwitz's health-related communications in the past, Ms. Greenland became impatient and refused to listen to anything Ms. Hurwitz had to say about her health.

37.

Despite her hardships, Ms. Hurwitz was never written-up or disciplined, and she continuously performed well, until her termination.

38.

When Ms. Hurwitz dislocated her knee, in or around December 2020, she began discussing using FMLA with Ms. Greenland. Ms. Greenland told Ms. Hurwitz that she did not need to fill out FMLA paperwork because they "could just work something out."

39.

On or about January 4, 2021, Ms. Hurwitz emailed Ms. Greenland about the status of her medical issues. She mentioned FMLA a few times in her email, however Ms. Greenland continued to tell her that it was unnecessary to fill out FMLA paperwork unless she "need[ed] to be out for a regular cadence of appointments."

40.

However, Ms. Hurwitz had been out for a regular cadence for appointments for the entirety of her employment, beginning in 2018. She had doctors' appointments almost every two weeks and she had, just the month before, informed Ms. Greenland of her need to get physical therapy for her knee.

41.

Also, Ms. Greenland had Ms. Hurwitz begin entering requests for same-day medical appointments as "unscheduled PTO." Ms. Hurwitz emailed Ms. Greenland to inform her that the system would not let her enter a request for "unscheduled PTO" and asked the reason of the new procedure. Ms. Greenland fixed the system but never responded to Ms. Hurwitz's question regarding the motivation behind the change in process.

42.

Ms. Hurwitz had an ample amount of PTO, enough to cover all her same-day requests for time off due to her disabilities. Additionally, she only requested it when all her work was completed because she did not have any coverage for her work.

43.

In early January 2020, in a video call, Ms. Hurwitz told Ms. Greenland that "[she] can't help but feel like [her] health issues are impacting [her] work and [her] ability to be promoted." Ms. Greenland said, "Yeah," and changed the subject.

44.

At the end of January 2021, Ms. Hurwitz scheduled her physical therapy session for February 11, 2021. Ms. Hurwitz planned to take the FMLA paperwork to that appointment, but she was terminated before that happened.

45.

On February 2, 2021, Ms. Hurwitz instant messaged Ms. Greenland and asked whether she was going to be in the office that week. When Ms. Greenland told her that she would probably be in on Thursday or Friday, Ms. Hurwitz replied, "I need to fax FMLA paperwork to my doctor, would you mind helping me do that?" Ms. Greenland did not respond.

46.

They had originally scheduled a call for that Tuesday afternoon and Ms. Hurwitz was going to discuss her health issues and tell Ms. Greenland what time off she needed, as well as the accommodations she needed for each. However, Ms. Greenland notified Ms. Hurwitz that afternoon that she needed to reschedule the meeting for Friday afternoon.

47.

Ms. Greenland never responded or acknowledged the FMLA paperwork Ms. Hurwitz had sent her.

48.

On February 3, 2021, Ms. Hurwitz sent Ms. Greenland the form requesting FMLA due to her ongoing back issues.

49.

On February 4, 2021, Ms. Greenland instant messaged Ms. Hurwitz to come into the office the following morning.

50.

On February 5, 2021, Ms. Hurwitz went into the office where Ms. Greenland and Carolina King, Senior VP of Learning & Development, told her that her employment was terminated as of that day.

51.

The reason given to Ms. Hurwitz was that she was terminated due to differences in management style and her not being a good fit.

## CLAIMS FOR RELIEF

## COUNT I:  FMLA INTERFERENCE

52.

Plaintiff re-alleges preceding paragraphs 18-51 as if set forth fully herein.

53.

Defendant is an 'employer' as defined by the FMLA.

54.

Plaintiff was an eligible employee under the FMLA.

55.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

56.

Plaintiff was employed by Defendant for more than 12 months.

57.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

58.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

59.

Plaintiff had medical conditions that required time off of work.

60.

Plaintiff had serious medical conditions as defined by the FMLA.

61.

Defendant received notice of Plaintiff's need for protected medical leave for her serious medical conditions as early as December 2020.

62.

Defendant terminated Plaintiff's employment to avoid having to provide Plaintiff FMLA leave.

63.

Defendant interfered with rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

64.

The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to him solely because of her right to leave under the FMLA.

65.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

## COUNT II:  FMLA RETALIATION

66.

Plaintiff re-alleges preceding paragraphs 18-51 as if set forth fully herein.

67.

Defendant is an 'employer' as defined by the FMLA.

68.

Plaintiff was an eligible employee under the FMLA.

69.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

70.

Plaintiff was employed by Defendant for more than 12 months.

71.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

72.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

73.

Defendant had medical conditions that required she take time off of work.

74.

Defendant had serious medical conditions as defined by the FMLA

75.

Defendant refused to allow Plaintiff leave and instead terminated her employment days after Plaintiff officially requested to take leave.

76.

Defendant's termination of Plaintiff's employment was causally related to her attempt to exercise her rights to protected medical leave pursuant to the FMLA.

77.

Defendant's termination of Plaintiff's employment for alleged differences in management style and her not being a good fit constitutes unlawful retaliation against Plaintiff for her attempt to exercise her rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

78.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT III

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT ("ADA")

## (ADA DISCRIMINATION AND RETALIATION)

79.

Plaintiff repeats and re-alleges preceding paragraphs 18-51 as if set forth fully herein.

80.

Section 102 of the ADA protects qualified individuals, including Plaintiff, from adverse employment actions based on a known disability of the employee.

81.

At times relevant to this action, Plaintiff was a "qualified individual" as that term is defined by the ADA.

82.

At times relevant to this action, Plaintiff has been an individual with disabilities as that term has been defined by the ADA.

83.

At times relevant to this action, Defendant and all individuals involved in the decision to terminate Plaintiff were aware of Plaintiff's disabilities, including at the time of Defendant's termination of Plaintiff.

84.

Plaintiff's disability and/or need for a reasonable accommodation were determinative factors in Defendant's decision to terminate Plaintiff.

85.

At all times relevant, Plaintiff could perform the essential functions of her position with, or without a reasonable accommodation.

86.

Defendant "regarded" Plaintiff as having a "disability" under the ADA.

87.

In terminating Plaintiff and failing to provide her with a reasonable accommodation under the ADA, Defendant discriminated against Plaintiff because of her disability, thus violating Plaintiff's rights under the ADA entitling her to all appropriate relief thereunder.

88.

As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

89.

Defendant discriminated against Plaintiff, and in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices has not only deprived Plaintiff of equal employment opportunities but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

90.

Plaintiff seeks compensatory and punitive damages.

**WHEREFORE**, Plaintiff judgment as follows:

(a)  A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the FMLA;

(b)  Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant Georgia United Credit Union from further unlawful conduct of the type described herein;

(c)  General damages for mental and emotional suffering caused by Defendant's misconduct;

(d)  Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(e)  Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(f)  Reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the FMLA;

(g)  Trial by jury as to all issues;

(h)  Prejudgment interest at the rate allowed by law; and

(i)  All other relief to which  she may be entitled.

Respectfully submitted the 1st day of October, 2021.

**BARRETT & FARAHANY**

*s/ V. Severin Roberts*
V. Severin Roberts
Georgia Bar No. 940504

*Attorney for Anna Hurwitz*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
severin@justiceatwork.com